UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
for the use and benefit of
RAGGHIANTI FOUNDATIONS III, LLC,

     Plaintiff,

v.                    Case No. 8:12-cv-942-T-33MAP

PETER R. BROWN CONSTRUCTION,
INC., et al.,

     Defendants.
_____/

## ORDER

Now before the Court are Plaintiff Ragghianti Foundations III, LLC's Motion for Partial Summary Judgment (Doc. # 95) and Defendant Peter R. Brown Construction, Inc.'s ("PRBC") Motion for Partial Summary Judgment (Doc. # 96). Upon due consideration and for the reasons that follow, both Motions for Partial Summary Judgment are denied.

## I.  Background

PBS&J Constructors, Inc. — registered owner of the fictitious name Peter R. Brown Construction, Inc.[1] — entered into a construction contract ("Prime Contract") with the

---

[1] As stated in the amended complaint, PBS&J and PRBC "are treated as interchangeable in communications to [Ragghianti] and others." (See Doc. # 59 at 4). As such, this Court will refer to these entities collectively as "PRBC."

United States of America, contracting through the Army Corps of Engineers, on August 16, 2010. (Doc. ## 59 at ¶¶ 8, 10; 95 at 2). The Prime Contract was for the project known as the Joint Intelligence Technical Training Facility at Goodfellow Air Force Base in San Angelo, Texas ("JITTF Project"). (Doc. ## 59 at ¶ 9; 95 at 1; 96 at 2).

"Sureties [Liberty Mutual Insurance Company and Safeco Insurance Company of America] issued a Payment and Performance Bond (no. 6724282) on August 23, 2010 in accordance with [the Miller Act,] 40 U.S.C § 3131[,] naming [PRBC] as principal." (Doc. ## 59 at ¶ 11; 95 at 2; 96 at 2). Ragghianti's surety, American Safety Casualty Insurance Company, a Counterclaim Defendant in this action, issued a common law performance bond on March 23, 2011. (Doc. ## 64 at 8; 95 at 2).

On January 24, 2011, PRBC "entered into a subcontract with [Ragghianti] to provide the building foundation, slab on grade, miscellaneous concrete and site concrete to the [JITTF Project]. . . ." (Doc. ## 59 at ¶ 9; 59-1; 95 at 1; 96 at 2; Ragghianti Foundations III, LLC Dep. Doc. # 96-10 at 17). The Subcontract – drafted by PRBC - expressly incorporates all the terms of the Prime Contract. (Doc. ## 59-1; 59-4-59-7). On August 18, 2011, Ragghianti entered into a sub-subcontract

with Jack Daniels, a local concrete company, to replace a labor source Ragghianti was originally going to utilize. (James Barlow Dep. Doc. # 98-5 at 24; Ragghianti Foundations III, LLC Dep. Doc. # 96-10 at 22; Baron Steve White Dep. Doc. # 99-1 at 66).

Ragghianti was on PRBC's subcontract schedule to mobilize with labor and supervision in March 2011. (Ragghianti Foundations III, LLC Dep. Doc. # 96-10 at 19-21). However, Ragghianti's commencement of performance of the Subcontract was delayed by four months. (Id. at 21). PRBC was behind schedule on the JITTF Project and was issued an "Interim Unsatisfactory" in late 2011. (Baron Steve White Dep. Doc. # 99-1 at 12, 33-34; Samuel Parker Dep. Doc. # 99-9 at 44). It was not until the first week of July, 2012 that PRBC was ready for Ragghianti to begin performance. (Ragghianti Foundations III, LLC Dep. Doc. # 96-10 at 20-21).

On February 14, 2012, Ragghianti was scheduled to place the first section of a building's 50,000 square foot concrete slab on grade. (Id. at 108; Baron Steve White Dep. Doc. # 99-1 at 26). Due to various changed considerations and other issues that arose on the day of the pour, Ragghianti's sub-subcontractor's finishing crew experienced difficulty in pouring the slab. (Ragghianti Foundations III, LLC Dep. Doc.

# 96-10 at 101-07; Joseph Williams Dep. Doc. # 99-5 at 23).
In all, 6,000 square feet of slab was poured on February 14,
2012, which was 13% of the slab concrete and 1-2% of the total
concrete called for under the Subcontract. (Samuel Parker
Dep. Doc. # 99-9 at 52; Ronald Harris Dep. Doc. # 99-7 at 18;
Charles Diegel Dep. Doc. # 99-8 at 34-35). However, it is
undisputed that the finish on the 6,000 square feet of slab
was of "unacceptable quality." (Ragghianti Foundations III,
LLC Dep. Doc. # 96-10 at 100-101; Ronald Harris Dep. Doc. #
99-7 at 20; Charles Diegel Dep. Doc. # 99-8 at 35).

On February 16, 2012, PRBC issued a Failure to Perform
Letter – also known as RF001 – to Ragghianti that stated:

> In accordance with Article 10 (Subcontractor's
> Failure to Perform) of the Subcontract . . . this
> letter serves as formal notice by [PRBC] that
> [Ragghianti] has failed to complete its scope of
> work in accordance with the contract documents.
>
> * * *
>
> In accordance with the provisions of the
> [S]ubcontract, unless this condition is remedied
> within 48 [hours] of this date [PRBC] shall take
> steps as necessary to overcome the condition in
> which case the Subcontractor shall be liable to
> [PRBC] for all losses including general conditions
> for supervision and loss of time.
>
> * * *

4

> Furthermore, Ragghianti is required to provide a
> detailed plan of action prior to future concrete
> placement . . . . This plan must be submitted no
> later than 1:00 P.M. on February 17, 2011 (sic).

(Doc. # 64-4). Ragghianti responded to the Failure to Perform

Letter by providing its action plan, which stated in relevant

part that the demolition of the defective concrete slab "will

be able to commence no later than Monday, February 20, 2012."

(Ragghianti Foundations III, LLC Dep. Doc. # 96-10 at 124,

127).

On February 22, 2012, PRBC issued a Notice of Termination

Letter – also referred to as RF002 - which stated:

> Ragghianti has failed to cure or otherwise have
> (sic) been unable to eliminate the default as
> outlined in [PRBC's] February 12, 2012 letter.
>
> * * *
>
> [On] February 17, 2012, regarding Ragghianti's
> action plan to address [the deficiencies outlined
> in PRBC's February 12, 2012 letter, Ragghianti]
> specifically stated that: "The demolition of the
> existing [Slab on Grade] will be able to commence
> no later than Monday, February 20, 2012 and can
> arguably be completed in about a week's time." To
> date, Ragghianti has not started this corrective
> work. . . . [PRBC] hereby terminates Ragghianti for
> default pursuant to Section 10 of the
> [Subcontract].

(Doc. # 64-5). PRBC noted that the deficiencies giving rise to the termination included, but were not limited to, failure to provide sufficient manpower, failure to provide adequate supervision, and work not in compliance with the contract requirements. (Id.).

There is a dispute amongst the parties as to whether Ragghianti timely started the corrective work. (Ragghianti Foundations III, LLC Dep. Doc. # 96-10 at 131-32; Baron Steve White Dep. Doc. # 99-1 at 117; Charles Diegel Dep. Doc. # 99-8 at 36; Samuel Parker Dep. Doc. # 99-9 at 51-53). Therefore, there is a dispute as to whether Ragghianti was properly terminated for default or terminated for convenience. (Ragghianti Foundations III, LLC Dep. Doc. # 96-10 at 131-32; Baron Steve White Dep. Doc. # 99-1 at 24, 78, 101-05). Pursuant to the Subcontract, a termination for default requires certain notices and conditions precedent that a termination for convenience does not. (Baron Steve White Dep. Doc. # 99-1 at 24).

Ragghianti initiated this action against PRBC, Liberty Mutual Insurance Company, and Safeco Insurance Company on April 27, 2012. (Doc. # 1). In the complaint, Ragghianti alleges that although it "has repeatedly demanded payment from [PRBC] for labor, material, and services provided

6

pursuant to the [entities'] Subcontract," PRBC "has failed and refused to make payment in breach of the Subcontract." (Id. at ¶¶ 18-19). Ragghianti filed suit for nonpayment of its contract balance, damages due to its termination, claiming it was wrongful, and for costs of delay and acceleration of its work. (See Doc. # 1). Ragghianti also brings an alternative claim for its damages based on the cardinal change doctrine.[2] (Id. at 8). Ragghianti further alleged a Miller Act breach of contract suit against PRBC and against Liberty Mutual Insurance Company and Safeco Insurance Company of America as co-sureties on the Miller Act bonds. (Id. at 7). Thereafter, Ragghianti filed an amended complaint on April 26, 2013. (Doc. # 59).

On May 10, 2013, PRBC filed a counterclaim against Ragghianti and American Safety Casualty Insurance Company. (Doc. # 64). The counterclaim alleged Contractual Indemnification (Count I against both Ragghianti and American

---

[2]  The cardinal change doctrine provides a contractor with relief when abuse of the change order process effectuates a drastic change in the scope of a project. See Edward R. Marden Corp. v. U. S., 442 F.2d 364, 369 (1971). A cardinal change is one that "fundamentally alters the contractual undertaking of the contractor" and which is not contemplated by the change order process. Id.

Safety Casualty Insurance Company) and Breach of Contract (Count II against Ragghianti). (Id.).

Ragghianti filed its present Motion for Partial Summary Judgment on September 23, 2013. (Doc. # 95). On October 7, 2013, PRBC filed a response in opposition to Ragghianti's Motion (Doc. # 99), and Ragghianti filed a reply on October 21, 2013 (Doc. # 104). Simultaneously, PRBC filed a Motion for Partial Summary Judgment on September 23, 2013. (Doc. # 96). Ragghianti filed a response in opposition to the Motion on October 7, 2013. (Doc. # 98). The Court has reviewed the Motions, the attachments thereto and the responses, and is otherwise fully advised in the premises.

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one

inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

## III. **Applicable Law**

The Subcontract entered into between PRBC and Ragghianti provides for the application of law as follows:

> Article 22.3 – Unless otherwise provided in the Contract Documents, the terms and conditions of this Subcontract shall be interpreted in accordance with the laws of the jurisdiction where the Project is located, exclusive of conflict of law provisions.

(Doc. # 59-1 at 14). The JITTF Project was located in San Angelo, Texas. (Doc. # 59 at ¶ 9). However, Article 22.3 includes the caveat "unless otherwise provided in the Contract Documents." The Contract Documents encompass Exhibit K, which expressly incorporates the Federal Acquisition

Regulations ("F.A.R."). (Doc. # 59-3). According to the Subcontract, in the event of a conflict between the F.A.R. provisions and the subcontract or any exhibits thereto, the F.A.R. provisions shall control. (Id.). As such, this action is governed by Texas state law and the F.A.R.

## IV.   **Ragghianti's Motion for Partial Summary Judgment**

In its Motion for Partial Summary Judgment, Ragghianti requests that this Court dispose of the following issues in its favor: (1) Ragghianti was not properly terminated for default; (2) Ragghianti is entitled to seek termination damages including lost profit and recovery on pre-termination claims from PRBC and its sureties; (3) PRBC's failure to pay Ragghianti amounts it was due constituted breach of the Subcontract; (4) PRBC cannot recover damages from Ragghianti or its surety due to alleged delay, specifically (a) liquidated damages never assessed by the construction project owner and/or (b) PRBC's overhead expense where there was concurrent delay; and (5) the Subcontract indemnity and release clauses are unenforceable under Texas law. (Doc. # 95 at 1). As such, this Court will address each issue separately.

### A.   **Termination for Default**

In its Motion, Ragghianti contends that its termination was improper because PRBC's termination was not in accordance with the Subcontract or the incorporated F.A.R. provisions. (Id. at 10, 12). Ragghianti submits that PRBC did not provide proper notice to Ragghianti – specifically two days' notice – that Ragghianti was being terminated. (Id. at 10). Instead, Ragghianti was provided two days' notice to remedy the deficiency of the concrete slab. (Id.).

According to Ragghianti, upon receiving RF001, it provided PRBC with an action plan for fixing the defective concrete slab, which indicated that Ragghianti would commence its removal of the concrete slab on February 20, 2012, and it arguably could be completed in one week. (Doc. # 95-3; Ragghianti Foundations III, LLC Dep. Doc. # 96-10 at 124, 127; Joseph Williams Dep. Doc. # 99-5 at 30). Ragghianti claims that at that time, PRBC did not advise Ragghianti that failure to do something other than provide an action plan was required. (Doc. # 95 at 10). Therefore, it is Ragghianti's position that once PRBC accepted Ragghianti's action plan and did not insist that the plan be completed within 48 hours, PRBC was required to furnish a new two day notice in order to terminate Ragghianti, which according to Ragghianti, PRBC did not provide. (Id.).

In response, however, PRBC contends that summary judgment on this issue is inappropriate as the facts are in dispute. (Doc. # 99 at 2). While Ragghianti argues its termination was improper because it did not receive proper notice, PRBC contends that Article 10.1 of the Subcontract does not require such notice to be given. (Id.). Instead, PRBC argues that it was only required to provide Ragghianti two days' notice to correct the defective condition and then, if such correction is not made, at its option, PRBC could choose to either overcome the condition on its own, terminate Ragghianti for default, or obtain specific performance of Ragghianti's work. (Id. at 2-3).

Furthermore, the "Subcontract states that if the defective condition cannot be remedied within 48 hours, then [Ragghianti] has to demonstrate 'in good faith that it is attempting to expeditiously resolve the condition.'" (Id. at 3). Therefore, PRBC submits that "whether [Ragghianti's] actions after receiving the RF001 notice . . . were sufficient to avoid a termination is a matter of whether it was, in good faith, attempting to expeditiously resolve the condition. A question of good faith is not generally an issue appropriate for summary judgment." (Id.).

Because Ragghianti's grounds for summary judgment are dependent upon its interpretation of the Subcontract – specifically Article 10.1 – this Court must determine as a threshold matter whether it should interpret the Subcontract as a matter of law or whether the provisions at issue are ambiguous and present a question of fact for the fact finder.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 158 (Tex. 1951). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. Myers v. Gulf Coast Minerals Mgmt. Corp., 361 S.W.2d 193, 196 (Tex. 1962).

If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. Columbia Gas Transmission Corp. v. New

14

Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). A contract, however, is ambiguous when its meaning is uncertain and doubtful or when it is reasonably susceptible to more than one meaning. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes an issue of fact. Id. at 394.

Turning to the specific contractual provision at issue – Article 10.1 – the parties dispute the requisite written notice PRBC was to have provided to Ragghianti before terminating Ragghianti's employment. Namely, (1) Ragghianti contends that once PRBC accepted Ragghianti's action plan and did not insist that the plan be completed within 48 hours, PRBC was required to furnish a new two day notice to terminate Ragghianti and (2) PRBC contends that Article 10.1 requires only two days' notice to correct the defective condition and then, if the correction is not made, PRBC may choose to terminate Ragghianti. After considering the parties' respective positions, the Court finds that the meaning and interplay of Article 10.1 with the remaining contractual provisions as well as the intent of both parties is uncertain and doubtful, fairly susceptible to more than one meaning

15

and, therefore, ambiguous. As there is a genuine issue as to whether Ragghianti was terminated in accordance with the Subcontract, this Court declines to grant summary judgment on this issue.

**B.   <u>Entitlement to Termination Damages</u>**

Ragghianti contends that it is entitled to seek termination damages from PRBC and its sureties, which includes lost profit and recovery on pre-termination claims. (Doc. # 95 at 14). To support and refute Ragghianti's position, the parties cite to various provisions of the Subcontract – Article 15, Article 16, Exhibit G, and Exhibit K – and the F.A.R.

As the parties have demonstrated with their differing interpretations of the Subcontract and its relationship with the F.A.R., there is a discrepancy in the reading of the relevant contractual provisions. Specifically, Ragghianti proffers that it is entitled to seek termination damages, stating:

> Article 15 is incorporated into the pertinent provision in Exhibit "K" regarding termination of the Subcontract for convenience. If the Court substitutes Article 16, a literal reading would leave [Ragghianti] with no remedy whatsoever for the reason that the [Army Corps of Engineers] did not pay [PRBC] for damages suffered by [Ragghianti]

16

> due to its termination by [PRBC]. If the F.A.R. is
> applied, which the Subcontract states governs in
> the event of any conflict, [Ragghianti's] remedies
> for termination would be the same as [PRBC's] in
> the event of termination by the [Army Corps of
> Engineers].

(Doc. # 95 at 17). Whereas, PRBC contends that "while the

Subcontract contains a termination for convenience clause,

[Article] 16 . . . clearly does not provide for the recovery

of unearned, anticipatory profits. . . ." Furthermore,

> [i]f the Court looks beyond [Article] 16 and refers
> to Exhibit K of the Subcontract, the result does
> not change. Exhibit K does not contain a separate
> termination for convenience provision. . . . That
> provision states that if there has been no
> termination by the Government, then [Article] 15
> should govern the Subcontractor's legal rights. As
> noted by [Ragghianti] . . . [Article] 15 has no
> application to a termination for convenience and
> instead imposes a duty on the Subcontractor to
> "timely and promptly" notify PRBC of any
> inconsistences or omissions in the Contract
> Documents.

(Doc. # 99 at 6-7)(internal citations omittied). Upon reading

the Subcontract, considering all the cited contractual

provisions together, whether Ragghianti is entitled to

termination damages is uncertain and the provisions cited by

the parties are reasonably susceptible to more than one

meaning. See United Protective Servs., Inc. v. W. Vill. Ltd.

P'ship, 180 S.W.3d 430, 433-34 (Tex. App. 2005)(finding the contractual provisions to be in conflict and the court was unable to harmonize those provisions while giving effect to the entire agreement. Thus the contracts are susceptible of more than one reasonable interpretation. Therefore, the contracts are ambiguous); S. Chem. Corp. v. Celanese, Ltd., No. 14-08-00348-cv, 2009 WL 3110941, at *3 (Tex. App. Sept. 10, 2009)(finding neither party's interpretation of the contract gave full effect to all of the provisions without requiring a court to add to or disregard other portions of the contract. Thus, the contract may not be assigned a definite or certain meaning and is therefore ambiguous). Therefore, as there remains a genuine issue regarding Ragghianti's entitlement to termination damages, this Court denies summary judgment on this issue.

### C.   Non-Payment Constitutes Default

In its Motion, Ragghianti contends that even if PRBC's termination of Ragghianti was a termination of convenience, PRBC would still be required to pay Ragghianti amounts it was due for work performed through January of 2012. (Doc. # 95 at 20-21).

Ragghianti contends that "PRBC certified to the [Army Corps of Engineers] and was paid for work performed by [Ragghianti] for which it never made the concomitant tender of payment upon termination." (Id. at 21). Ragghianti submits that pursuant to the Prime Contract, "PRBC was required to comport with the Prompt Payment Act" and serve Ragghianti with written notice of its intention to withhold payment due to Ragghianti and also provide a copy of the written notice to the Army Corps of Engineers. (Id.). Furthermore, Ragghianti contends that "PRBC did not comport with its contractual conditions precedent in withholding payment [because] it never gave [Ragghianti] five (5) days' notice as required in order for [PRBC] to assert claims for damage[s] due to purportedly deficient work under Article 4.14 of the Subcontract." (Id.).

In response, PRBC asserts that after termination of Ragghianti, PRBC asked Ragghianti "to accept a joint check which reflected payment owed to Jack Daniels for work completed prior to termination." (Doc. # 99 at 9; Ragghianti Foundations III, LLC Dep. Doc. # 96-10 at 160-61). Furthermore, PRBC provides that "in the Notice of Termination letter, PRBC informed [Ragghianti] that it was terminating it for default and that it would withhold funds and any unpaid

19

contract balance as a result of [Ragghianti's] defective work and subsequent termination." (Doc. # 99 at 10). Therefore, it is PRBC's position that it gave sufficient notice to Ragghianti that it intended to withhold payments as a result of Ragghianti's termination and defective work. (Id.).

Upon review of the arguments set forth by the parties and the record before the Court, the Court finds that an issue of material fact exists as to whether PRBC provided Ragghianti with proper notice of withholding funds due to Ragghianti for defective or incomplete work. As such, the Court declines to grant summary judgment on this issue.

D.     **PRBC's Entitlement to Liquidated Damages and/or Overhead Expenses**

Ragghianti submits that it is entitled to summary judgment on the issue of whether PRBC can recover liquidated damages never assessed by the Project Owner and/or overhead expenses where there was concurrent delay. (Doc. # 95 at 21). According to the Amended Joint Final Pretrial Statement filed on January 3, 2014, PRBC has "abandoned its claims of delay and liquidated damages in this case." (Doc. # 111 at 11). As such, this Court considers this issue moot.

E.     **Enforceability of Indemnity and Release Clauses**

Ragghianti contends that the Subcontract includes indemnity and release clauses whereby "[Ragghianti] is liable for events indirectly caused by negligence of [PRBC] and/or the [Army Corps of Engineers]." (Doc. # 95 at 23). According to Ragghianti, the clauses are unenforceable under Texas law because "indemnification provisions in contracts and releases that purport to indemnify parties in whole or part from their own negligence must be emphasized within the documents," and "there is no emphasis added to the indemnity clauses and release language within the subcontract." (Id. at 23). However, PRBC contends that inconspicuous language is immaterial when the buyer has actual knowledge of the disclaimer. (Doc. # 99 at 12). PRBC submits that the initials of both Ragghianti and PRBC are at the bottom of pages six and seven of the Subcontract evidencing the parties' actual knowledge of the provisions of the Subcontract. (Id.).

Under Texas law, an indemnification or release provision must satisfy the fair notice requirements. Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993). The fair notice requirements include (1) the express negligence doctrine and (2) the conspicuousness requirement. Id. The express negligence doctrine states that a party seeking indemnity from the consequences of that party's own

21

negligence must express that intent in specific terms within the four corners of the contract. Ethyl Corp. v. Daniel Const. Co., 725 S.W.2d 705, 708 (Tex. 1987). The conspicuous requirement mandates "that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." Dresser Indus., Inc., 853 S.W.2d at 508. However, while actual notice of an indemnity or release provision may serve as a substitute for the conspicuousness prong of the fair notice doctrine, it does not serve as a substitute for the express negligence doctrine. Sydlik v. REEIII, Inc., 195 S.W.3d 329, 333 (Tex. App. 2006). Whether a clause is conspicuous and meets the express negligence doctrine presents a question of law for the court. Dresser Indus., Inc., 853 S.W.2d at 509.

The relevant contractual provisions state in pertinent part:

> Article 6.1 – Subcontractor hereby assumes the entire responsibility and liability for all Subcontractor's [w]ork, whether or not erected in place, until final acceptance of the Subcontractor's [w]ork by The Construction Manager, Prime contract, and the Owner. Subcontractor shall have no responsibility or liability to the extent the loss, damage or destruction is directly caused by the negligence, acts or omissions of Owner, The Construction Manager, or any other Indemnified party as defined in [Article] 6.2.

Article 6.2 – To the fullest extent permitted by
law, Subcontractor shall indemnify, defend and hold
harmless The Construction Manager, Prime Contract
and the Owner . . . to the extent said Losses arise
out of Subcontractor's actual failure to perform
this Subcontract in accordance with the terms of
this Subcontract and Contract Documents. The
foregoing obligations of Subcontractor shall
include, but are not limited to, indemnifying,
defending and holding harmless the Indemnified
Parties from claims made by third parties against
any Indemnified Party to the extent such claims
arise out of the negligence, acts or omissions of
Subcontractor.

Article 6.3 – To the fullest extent permitted by
law, Subcontractor agrees to indemnify, defend and
save harmless the Indemnified Parties and each of
them from and against any and all Losses arising
out of or claimed to arise out of injuries to
persons including, but not limited to, death, or
damage to tangible and intangible property
including the loss of the use resulting therefrom,
or arising or claimed to arise from violation of
any codes, rules, ordinances, statutes or
regulations, occasioned by or growing out of the
performance of Subcontractor's [w]ork hereunder by
Subcontractor or Subcontractor's Lower-Tier
Subcontractors.

* * *

Article 6.7 – To the extent an indemnity obligation
has become the subject of legal process . . .
Subcontractor shall indemnify and pay all Losses of
the Indemnified Parties until such time as a final
adjudication is entered.  To the extent such final
adjudication holds that an Indemnified Party was
negligent, Subcontractor shall be entitled to
recover from such Indemnified Party all reasonable

costs it incurred on account of its indemnification
of such Indemnified Party to the extent not paid by
applicable insurance coverage.

* * *

Article 6.9 – Termination of this Subcontract by
The Construction Manager or abandonment by
Subcontractor shall not relieve Subcontractor from
Subcontractor's obligations in connection with
Subcontractor's [w]ork performed prior to
termination or abandonment nor will such
termination or abandonment abrogate any obligations
of Subcontractor under, or rights or remedies
afforded to The Construction Manager by, this
Subcontract or the Contract Documents including,
without limitation, Subcontractor's indemnity
obligations.

* * *

Exhibit K – In addition to any other remedies
provided by law or under this Subcontract,
Subcontractor agrees to indemnify and save harmless
Contractor from and against any and all loss . . .
caused or occasioned directly or indirectly by the
failure of Subcontractor or any of its lower-tier
subcontractors to comply with any applicable law,
regulation, ordinance, rule, standard, notice or
requirement, including without limitation any
failure to fully comply with this Exhibit K.

(Doc. ## 59-1 at 6-7; 59-3 at 13).

Upon review of the Subcontract, the Court finds that the

relevant contractual provisions do not require Ragghianti to

indemnify PRBC for PRBC's own negligence. In fact, the

provisions, read collectively, express that Ragghianti is to indemnify PRBC from claims arising out of the negligence, acts or omissions of Ragghianti or Ragghianti's Lower Tier Subcontractor – Jack Daniels – not the negligence of PRBC. As the provisions are not contemplating indemnification for PRBC's own negligence, the express negligence doctrine is inapplicable. See Tutle & Tutle Trucking, Inc. v. EOG Resources, Inc., 391 S.W.3d 240, 247 (Tex. App. 2012)(stating "Several courts . . . have stated that the express-negligence doctrine does not apply when an indemnitee . . . does not seek indemnity for its own negligence."); MAN GHH Logistics GMBH v. Emscor, Inc., 858 S.W.2d 41, 43 (Tex. App. 1993)(finding the express negligence doctrine inapplicable because appellants were not seeking to recover for their own negligence).

Therefore, as actual notice of an indemnity or release provision may serve as a substitute for the conspicuousness prong of the fair notice requirement, the Court finds that the indemnification provisions within the Subcontract are enforceable under Texas Law. Pages six and seven of the Subcontract, which contain the Subcontractor's Liability provisions, are initialed by both PRBC and Ragghianti. This evidences both parties' actual notice of the indemnification

provisions. As a result, summary judgment on this issue is denied.

## V.   __PRBC's Motion for Partial Summary Judgment__

In its Motion, PRBC contends that although the issues surrounding Ragghianti's termination, performance of its work, and its compliance with its contractual obligations are in dispute, the type of damages Ragghianti seeks is an appropriate issue for summary judgment. (Doc. # 96 at 2-3). In the event Ragghianti establishes entitlement to any measure of damages by proving PRBC breached the Subcontract, PRBC contends that three of the damages categories sought by Ragghianti are prohibited by the Subcontract and thus the Court should grant summary judgment in PRBC's favor with respect to these damages. (Id. at 3). Ragghianti seeks damages in five categories – un-earned profits, increased costs, outstanding contract balance, unabsorbed home office overhead, and sub-subcontractor claims. (Id.). It is PRBC's position that the Subcontract prohibits Ragghianti from recovering damages in the form of un-earned profits, unabsorbed home office overhead, and un-earned profits and unabsorbed home office overhead from its sub-subcontractor – Jack Daniels. (Id.). As there is a dispute as to whether Ragghianti was terminated for convenience or terminated for

26

default, the Court defers its determination on the appropriate type of damages Ragghianti may be entitled to until such time as the finder of fact has resolved the underlying dispute.

However, regardless of the resolution as to whether PRBC terminated Ragghianti for default or convenience, the Court finds it appropriate to address PRBC's contention that Ragghianti is prohibited from recovering any damages, including sub-subcontractor damages, resulting from events or work occurring prior to December 30, 2011, because Ragghianti signed "broad releases and received payment from PRBC for the amounts stated therein up through December 30, 2011." (Id. at 10).

In response to PRBC's contention, Ragghianti argues that PRBC is barred from raising release as an affirmative defense as an issue on summary judgment. (Doc. # 98 at 17). Ragghianti proffers that PRBC did not raise the affirmative defense of release in response to Ragghianti's amended complaint, and therefore the affirmative defense is waived and cannot be raised in a post-answer dispositive motion. (Id. at 17-18).

Upon review of PRBC's answer, PRBC has alleged the following affirmative defenses: (1) Prior Breach; (2) Payment; (3) Conversion of Termination for Default; (4)

Setoff; (5) Estoppel; (6) Failure to Mitigate; and (7) Barment. (See Doc. # 64). PRBC's affirmative defenses do not mention the Subcontractor Affidavit and Partial Release of Liens, which PRBC now brings forth in an attempt to show Ragghianti has released any claim for damages resulting from events or work occurring prior to December 30, 2011. (See Doc. # 96 at 10). PRBC's answer to Ragghianti's amended complaint pled six affirmative defenses; release was not one of them.  It is too late for PRBC to assert the affirmative defense of release now at the summary judgment stage. See Rakip v. Paradise Awnings Corp., 514 F. App'x 917, 920 (11th Cir. 2013)(stating "Release is an affirmative defense, and a party must plead it or it is waived."); Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1239 (11th Cir. 2010) (finding that "Failure to plead an affirmative defense generally results in a waiver of that defense."). Therefore, the Court finds that PRBC may not raise the affirmative defense of release at this stage in the proceedings.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)  Plaintiff Ragghianti Foundations III, LLC's Motion for Partial Summary Judgment (Doc. # 95) is **DENIED**.

(2)   Defendant Peter R. Brown Construction, Inc.'s Motion for

Partial Summary Judgment (Doc. # 96) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

10th day of January, 2014.


VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies: All Counsel of Record